UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE
*Electronically filed*

| | |
|---|---|
| RESTOCON CORPORATION | **CASE NO.** _____ |
| PLAINTIFF, | |
| VS. | JURY DEMAND |
| METROPOLITAN KNOXVILLE AIRPORT AUTHORITY | |
| **SERVE:** Mark G. Mamantov | |
| 900 S. Gay St. | |
| Ste. 1700 | |
| Knoxville, TN 37902-1859 | |
| DEFENDANT | |

# COMPLAINT

Comes the Plaintiff, Restocon Corporation, by counsel, and for its Complaint against the Defendant, Metropolitan Knoxville Airport Authority, states as follows:

### Parties, Venue, and Jurisdiction

1. The Plaintiff, Restocon Corporation (hereinafter "Restocon") is a Florida corporation with its principal place of business in the State of Florida, in that its headquarters, which is the actual center of direction, control, and coordination of Restocon's business, is located in Hillsborough County, Florida. Restocon is authorized to do, and does, transact business within the State of Tennessee. Restocon is deemed a resident of the State of Florida for jurisdictional purposes.

2. The Defendant, Metropolitan Knoxville Airport Authority (hereinafter "MKAA"), is a municipal corporation with the power to sue and be sued, with its principal place of business

in Knoxville, Tennessee. MKAA is deemed a resident of the State of Tennessee for jurisdictional purposes.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and fees.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events, acts, and/or omissions that form the basis of this Complaint occurred substantially within Blount County, Tennessee.

5. This Court may exercise personal jurisdiction over the Defendant.

6. Pursuant to the terms of the Contract that is the subject of this case, the Defendant has waived any objection to jurisdiction or venue in this Court.

**Facts**

7. At all times relevant to this civil action, Restocon Corporation had a current and valid Tennessee Contractors License, license no. 67570.

8. MKAA owns and operates the McGhee Tyson Airport, located in Alcoa, Blount County, Tennessee.

9. In November 2019, MKAA made a call for bids on a project called "Parking Garage Maintenance and Repairs" (hereinafter the "Project"), which involved repairs to be made to a parking garage at the McGhee Tyson Airport.

10. The work to be completed on the Project included repair of cracks and other damage to concrete elements of the parking garage, replacement of steel brackets and bearing pads, masonry crack repairs, traffic coating removal and replacement, and other items.

11. The engineering firm C2RL, Inc. designed the Project and served as the Project engineer and MKAA's representative for purposes of the Project.

12. According to Article 3 of the bid form, each bidder represented that, in submitting its bid, it had "examined and carefully studied the Bidding Documents [and] other related data identified in the Bidding Documents[.]"

13. Addendum #1 to the bidding documents provided by MKAA consisted of questions posed by prospective bidders and the answers supplied by C2RL, Inc., on behalf of MKAA.

14. In response to questions presented by prospective bidders, in Addendum #1, C2RL, Inc. repeatedly referred bidders to the attached revised phasing plans and stated, "The phasing can be manipulated on an as needed basis to expedite the contract."

15. The documents supplied to bidders and attached to Addendum #1 included a revised phasing plan dated July 27, 2020. (Hereinafter the "Phasing Plan").

16. The Phasing Plan indicated that areas within the parking garage would be made available to the successful bidder in three phases: Phase 1 included the entire third level and approximately half of the second level; Phase 2 included the remaining half of the second level and most of the first level; and Phase 3 included the remainder of the first level.

17. Article 6 of the bid form stated that work on the Project would be complete within 275 calendar dates of the commencement of the contract time.

18. Restocon relied on the information supplied by MKAA during the bidding process, including the Phasing Plan and other Contract Documents, to prepare its bid, including staffing of the project; scheduling and order of the work; and quantity, availability, and pricing of materials, labor, and equipment.

19. In particular, resurfacing the traffic coatings of the parking garage was a multi-step process in which the contractor would remove the existing traffic coating (which was itself a multi-step process), replace sealant, repair the parking surface and garage structures, apply the new coating, and repaint the parking and traffic markings. This process required careful advance planning.

20. Restocon's bid was submitted on December 3, 2020.

21. Restocon's bid was ultimately successful and the Project was awarded to Restocon.

22. A contract for Parking Garage Maintenance and Repairs for the McGhee Tyson Airport Authority (hereinafter "the Contract") was signed by representatives of Restocon and MKAA on or about March 30, 2021.

23. According to the Contract, the Contract Documents included, among other things, the Bidding Requirements, Bid Forms, Addendum #1, the Contract Form and Contract Attachments, and General Conditions. A complete copy of the Contract Documents is attached hereto as **Exhibit A**.

24. Notice to proceed was issued on April 21, 2021, with a start date of May 3, 2021.

25. Restocon arrived on site on May 3, 2021, and immediately began work.

26. On June 10, 2021, MKAA unilaterally changed the areas of the parking garage that were available to Restocon, in violation of the Phasing Plan and other provisions of the Contract Documents.

27. MKAA's unilateral change to the Phasing Plan was not done to expedite the Contract.

28. Although the entire third level of the parking garage was available to Restocon between May 3, 2021, and June 9, 2021, as of June 10, 2021, MKAA rescinded access to the

4

majority of the area promised in the Phasing Plan before Restocon could begin or complete work on such area, instead splitting the third floor into six phases and further subdividing the original three Phases of work as identified in the Contract Documents.

29. At no time did MKAA make revisions to the Phasing Plan via Change Order, Work Change Directive, or other written agreement authorized by the Contract or the Contract Documents.

30. Beginning June 10, 2021, MKAA expected Restocon to complete all of its work to remove and replace the existing traffic coating in each of the new, much smaller, subdivided areas made available for Restocon's work before it would allow Restocon access to another section of the parking garage, in violation of the Phasing Plan and other provisions of the Contract Documents.

31. Despite Restocon's best efforts to work within the confines of the limited area made available by MKAA, MKAA's violation of the Phasing Plan resulted in significant delays and inefficiencies, as a result of which Restocon was forced to make staffing changes.

32. At all times relevant to this action, Restocon properly and appropriately staffed its work on the Project, based on the area in which MKAA allowed Restocon to work.

33. After June 10, 2021, Restocon frequently asked MKAA to make more area available, but MKAA continued to limit the area available in violation of the Phasing Plan.

34. Multiple Change Orders were executed by the parties, but none of them involved amending or revising the Phasing Plan or extension of time of the work to allow Restocon sufficient time to complete its work in light of MKAA's unilateral alteration of the work area made available in violation of the Phasing Plan.

35. MKAA advised Restocon it would not extend the time in which Restocon could complete its work, to allow for the delays caused by MKAA's unilateral alteration of the Phasing Plan, and the contract period would expire before Restocon's work was complete.

36. MKAA's unilateral alteration of the Phasing Plan in violation of the Contract Documents prevented Restocon from completing the work in the time allotted.

37. MKAA's unilateral altering of the area made available to Restocon, in violation of the Phasing Plan, was not an authorized change in the work as permitted by the Contract or the Contract documents.

38. Restocon was able to adequately staff the job and could have completed the work within the time allotted but for MKAA's unilateral altering of the phasing plan.

39. MKAA improperly failed to furnish the site to Restocon and/or delayed the furnishing of the site to Restocon, in violation of the Phasing Plan and other Contract Documents.

40. Due to MKAA's unilateral altering of the phasing plan, Restocon incurred additional costs.

41. MKAA's unilateral alteration of the Phasing Plan and failure to timely furnish the site to Restocon was a delay beyond the control of Restocon.

42. At no time did MKAA suspend the work or terminate the Contract for cause.

43. Due to MKAA's unilateral altering of the Phasing Plan, there were changes in unit pricing, resulting in additional damages to Restocon.

44. Including overhead and profit, additional costs, and changes in unit pricing the total MKAA owes to Restocon is no less than $984,957.62, in addition to pre-judgment and post-judgment interest and other available damages.

45. In conformance with the Contract, via letter dated April 4, 2022, Restocon provided written notice to MKAA, via its representative C2RL, of the effect of MKAA's unilateral modification of the Phasing Plan, including the additional costs and changes in unit pricing, and thereby made a timely request for alteration of the Contract to reflect the additional costs and changed unit pricing be paid.

46. Via letter dated April 29, 2022, C2RL, acting as representative of MKAA, rejected Restocon's request on behalf of MKAA.

47. Via letter dated May 20, 2022, Restocon provided MKAA notice of its intent to mediate as required by the Contract Documents.

48. Mediation occurred, as required by the Contract Documents, but was unsuccessful.

49. Thereafter, Restocon provided timely notice to MKAA of its intent to submit the claim to a court of competent jurisdiction, in compliance with the Contract Documents.

50. Restocon timely provided all notices required under the Contract Documents.

51. All conditions precedent to filing suit have been satisfied, and suit was timely filed.

52. A valid and enforceable contract existed between Restocon and MKAA.

53. MKAA's failed to perform its contractual obligations, amounting to a breach.

54. Restocon suffered damages as a result of MKAA's breach of its contractual obligations.

## **Count I – Breach of Contract as to the Phasing Plan**

55. Restocon re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

56. The Phasing Plan was included in the Contract and/or Contract Documents.

57. The Phasing Plan was not modified by Change Order, Work Directive, or other written agreement between the parties.

58. MKAA unilaterally modified the Phasing Plan.

59. MKAA's reason for unilaterally modifying the Phasing Plan was not to expedite the Contract.

60. But for MKAA's unilateral altering of the Phasing Plan, Restocon could have completed its work in the time allotted by the Contract.

61. MKAA's unilateral altering of the Phasing Plan constitutes breach of the Contract.

62. Due to MKAA's breach of the Contract by unilaterally altering the Phasing Plan, Restocon has suffered damages.

### Count II – Breach of Contract as to failure to furnish the site

63. Restocon re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

64. MKAA's duties under the Contract and Contract Documents included the duty to furnish the site to Restocon.

65. MKAA's unilateral altering of the Phasing Plan, whereby it restricted access to the site in violation of the Contract and Contract Documents, constituted breach of contract.

66. MKAA's failure to furnish the site to Restocon in accordance with the Contract Documents prevented Restocon from completing the work within the time allotted.

67. MKAA's failure to furnish the site to Restocon in accordance with the Contract Documents resulted in damages to Restocon.

### Count III – Breach of contract as to failure to execute change order

68. Restocon re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

69. As a result of MKAA's unilateral alteration of the Phasing Plan and failure to make the site available to Restocon, Restocon's work was delayed for reasons beyond the control of Restocon.

70. As a result of the delay, MKAA was obligated to execute Change Orders to extend the time in which Restocon had to complete the work and/or to compensate Restocon for its increased costs, changes in unit pricing, overhead, and profit.

71. MKAA's refusal to execute Change Orders to extend the time in which Restocon had to complete the work and/or to compensate Restocon for its increased costs, changes in unit pricing, overhead, and profit was a breach of contract, which caused Restocon to suffer damages.

### Count IV – Breach of contract as to failure to pay increased costs and changes to unit pricing

72. Restocon re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

73. Due to MKAA's breach of its duties under the Contract Documents, Restocon incurred damages, including increased costs, changes in unit pricing, profit, and overhead.

74. The Contract Documents obligated MKAA to pay Restocon for its increased costs and changes in unit pricing, including overhead and lost profit.

75. Due to MKAA's breach of the Contract, Restocon has suffered losses totaling up to $984,957.62 in increased costs and unit pricing changes, which it is entitled to recover.

76. In addition to the amount owed due to MKAA's breach of contract, Restocon is also entitled to recover interest on the principal balance owed plus any other remedies, expenses, attorney fees and/or costs, court costs, and discretionary costs.

WHEREFORE, the Plaintiff, Restocon Corporation, prays that this Court as follows:

1. For entry of judgment against MKAA in favor of Restocon, in an amount that is determined to be fair and reasonable damages for breach of contract up to $984,957.62;

2. For an award of pre-judgment interest;

3. For an award of post-judgment interest;

4. For an award of its costs sustained herein, including attorney fees;

5. For trial of this cause by a jury of twelve (12); and,

6. For any and all other just and proper relief to which the Court may deem it is entitled.

Respectfully submitted,

WALTERS RICHARDSON, PLLC

*/s/ Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
100 Hazel Path Court, Suite A
Hendersonville, TN 37075
Telephone: (615) 919-9090
Facsimile: (859) 219-9292
Email: Elizabeth@WaltersRichardson.com
COUNSEL FOR PLAINTIFF,
RESTOCON CORPORATION

7590.006943C:\NRPortbl\Golden_and_Walters\KIM\1834407_1.docx